UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

LEMARICUS DEVALL DAVIDSON,                )
                                          )
                Petitioner,               )
                                          )
v.                                        )          No.:   3:22-CV-15-TAV-DCP
                                          )
KENNETH NELSEN, Warden of                 )
Riverbend Maximum Security Institution,   )
                                          )
                Respondent.               )


**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is Petitioner's Motion to Stay and Hold in Abeyance Federal

Habeas Proceedings [Doc. 62] and Motion for Extension of Time to file his motion for

discovery [Doc. 68].  For the reasons discussed herein, Petitioner's Motion to Stay and

Hold in Abeyance Federal Habeas Proceedings [Doc. 62] is **DENIED**, and his Motion for

Extension of Time [Doc. 68] is **GRANTED**.

I.      **Background**

This case arises out of the 2007 kidnapping, robbery, rape, and murder of Channon

Christian and Christopher Newsom [*See* Doc. 24, p. 12].  In 2009, following an 8-day trial,

a Knox County jury convicted Petitioner of numerous offenses, including 16 counts of

first-degree felony murder and 2 counts of first-degree premeditated murder [*See id*. at

171].  *See State v. Davidson*, 509 S.W.3d 156, 180 (Tenn. 2016).[1]  The jury recommended

---

[1] Following the verdict, the trial court dismissed two felony-murder counts [*See* Doc.
12-30, p. 42].  *Davidson*, 509 S.W.3d at 180.

the death sentence for the murders [*See* Doc. 12-29, pp. 43–47]. *Davidson*, 509 S.W.3d at 180 ("The jury imposed two sentences of death[.]").

Petitioner has filed a petition for writ of habeas corpus in this Court and challenges the legality of his confinement under 28 U.S.C. § 2254 [Doc. 24, p. 11]. He now moves the Court to stay, and hold in abeyance, this proceeding pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005) "to permit the state courts to review a motion to reopen, two writs of error corum nobis, and a second petition for post-conviction relief" [Doc. 62, p. 1]. According to Petitioner, his "pending filings [in state court] raise several ineffective assistance of counsel claims and a newly arising Equal Protection claim that are relevant to this" proceeding [*Id*.]. Respondent has filed a response to Petitioner's motion [Doc. 66], and Petitioner has filed a reply [Doc. 67].

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). The text of § 2254 provides that a petition for a writ of habeas corpus "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Accordingly, "[a] federal district court, generally speaking, may not grant [] [a] writ on a 'mixed petition'"—that is, a petition containing both exhausted and unexhausted claims. *Harris v. Lafler*, 553 F.3d 1028, 1031 (6th Cir. 2009) (citations omitted).

Before the AEDPA's enactment, the United States Supreme Court, pursuant to *Rose v. Lundy*, 455 U.S. 509, 522 (1982) imposed a "total exhaustion requirement," meaning federal district courts had to dismiss mixed petitions in their entirety. *Id.* ("[W]e hold that a district court must dismiss habeas petitions containing both unexhausted and exhausted claims."). The AEDPA, however, "dramatically altered the landscape for federal habeas corpus petitions." *Rhines*, 544 U.S. at 274. Although it preserves *Lundy*'s total-exhaustion requirement, the AEDPA imposes a one-year statute of limitations on the filing of federal petitions "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases." *Id.* (internal quotation marks and citations omitted).

However, "[a]s a result of the interplay between AEDPA's 1-year statute of limitations and *Lundy*'s dismissal requirement," a state prisoner who timely filed a mixed petition in federal court risked "forever losing their opportunity for any federal review of their unexhausted claims." *Id.* at 269 ("If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review."). To avoid this harsh result, the Supreme Court in *Rhines* determined that a district court may stay, and hold in abeyance, a mixed petition while a state prisoner presents his unexhausted claims in state court. *Id.* at 276 ("AEDPA does not deprive district courts of that authority." (citation omitted)). "Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court." *Id.* at 275–76.

The *Rhines* Court, however, was clear that a district court's authority to issue a stay is not unbridled because "if employed too frequently," a stay can "frustrate the AEDPA's

3

goal of finality by dragging out indefinitely their [a state prisoner's] federal habeas review." *Id.* at 277–78. Accordingly, a district court contemplating a stay of a mixed petition must consider whether a "petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions." *Id.* at 278. If "the petitioner ha[s] good cause for his failure to exhaust, his unexhausted claims are potentially meritorious [or not plainly meritless], *and* there is no indication that he engaged in dilatory litigation tactics," denying a stay "likely would be an abuse of discretion." *Id.* (emphasis added) (explaining that, "[i]n such a case, the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions"). A petitioner bears the burden of showing he is entitled to a stay. *Sueing v. Palmer*, 503 F. App'x 354, 357 (6th Cir. 2012).

## III. Discussion

### A. Motion to Stay

#### 1. Ineffective-Assistance-of-Counsel Claims

Petitioner seeks a *Rhines* stay so he can "present[] to the state court (for the second time)" several claims of ineffective assistance of trial counsel [Doc. 63, p. 5]. Petitioner identifies these claims as follows: trial counsel was ineffective for failing to (1) "seek a change of venue due to unprecedented levels of inflammatory media" [*Id.* at 15]; (2) adequately ensure the venire represented a fair cross-section of the community [*Id.* at 16]; (3) consult with a ballistics expert [*Id.* at 17]; (4) present evidence of diminished capacity [*Id.* at 18]; (5) present evidence of Judge Richard Baumgartner's impairment and

4

misconduct [*Id*. at 19]; and (6) offer expert testimony at sentencing on Petitioner's cognitive impairment [*Id*. at 20].

Petitioner indicates that he raised these ineffective-assistance-of-counsel claims in his amended petition for post-conviction relief [Doc. 63, p. 8]. He contends, though, that he was unsuccessful in trying to develop them because the state court "arbitrarily" denied him "funding and time" [*Id*. at 10]. In particular, Petitioner explains that he had moved the trial court to obtain the expert services of: (1) Bryan Edelman, Ph.D., an expert on the impact of pretrial publicity on juror decision-making, in support of his ineffective-assistance-of-counsel "venue claim" [*Id*. at 9; Sealed Doc. 18-3, pp. 84–113]; (2) Justin D. Levinson, L.L.M., J.D., an expert on implicit racial bias and its impact on juror decision-making, in support of his ineffective-assistance-of-counsel claims "surrounding the issues of pretrial publicity, venue, and conduction of jury selection" [Doc. 63, p. 10; Sealed Doc. 18-3, pp. 23–24]; (3) James Lipman, Ph.D., a neuropharmacologist, in support of his ineffective-assistance-of-counsel claims relating to trial counsel's alleged failure to "present evidence of diminished capacity" and of Judge Baumgartner's impairment and misconduct [Doc. 63, p. 10; Sealed Doc. 18-3, pp. 144–59]; (4) Frederick Wentling, a ballistics expert, in support of his ineffective-assistance-of-counsel "ballistics claim" [Doc. 63, p. 10; Sealed Doc. 18-6, pp. 46–60]; and (5) Pamela Auble, Ph.D., a licensed psychologist, in support of his ineffective-assistance-of-counsel "experts at sentencing claim" [Doc. 63, p. 10; Doc. 63-1, pp. 345–46; Sealed Doc. 18-3, pp. 81–82].

The trial court denied his motions for the expert services of Edelman, Levinson, Wentling, and Auble [Doc. 63, p. 12; Sealed Doc. 18-3, pp. 16–18; Sealed Doc. 18-9,

5

pp. 3–11].  And although it did partially grant Petitioner's motion for the services of expert Lipman [Doc. 63, p. 12; Doc. 18-3, pp. 6–7], Petitioner states that "the court refused to allow [him] adequate time" to complete the necessary factual investigation related to expert Lipman [Doc. 63, p. 12 (citing Doc. 13-43, p. 170 (arguing, on appeal, that the trial court employed an "expedited approach to Mr. Davidson's capital post-conviction claims"))].

Petitioner, in his recent state court filings, presents his ineffective-assistance-of-counsel claims again, but "[t]his time," he supports them with "evidence the state court previously denied" [Doc. 63, p. 5].  This evidence consists of "newly developed expert opinions," including the declarations of experts Edelman, Levinson, Lipman, Auble, and Wentling, in addition to witness statements [*Id.* at 5, 9–10].

### a.  Whether *Rhines* Applies

In this section, the Court will first consider whether *Rhines* applies to the following four ineffective-assistance-of-trial-counsel claims: trial counsel was ineffective for failing to (1) "seek a change of venue due to unprecedented levels of inflammatory media" ("venue-related claim") [Doc. 63, p. 15]; (2) consult with a ballistics expert [*Id.* at 17]; (3) present evidence of diminished capacity ("diminished-capacity claim") [*Id.* at 18]; and (4) present evidence of Judge Baumgartner's impairment and misconduct [*Id.* at 19].[2]

---

[2] Unlike these four claims, the record reflects that Petitioner did not raise the following two ineffective-assistance-of-trial-counsel claims on appeal: trial counsel was ineffective for failing to (1) "ensure the venire was comprised of a fair cross-section of the community" [Doc. 63, p. 16]; and (2) "offer expert testimony at sentencing on" Petitioner's "cognitive impairment" [*Id.* at 9; *see* Doc. 13-43 (appellate brief)].  The Court will address whether Petitioner is entitled to a *Rhines* stay for these claims in the next section of this memorandum opinion and order.

6

According to Respondent, *Rhines* does not apply for two reasons. First, Respondent argues that Petitioner has already "properly exhausted" some of the ineffective-assistance-of-trial-counsel claims he is raising for a second time in state proceedings [Doc. 66, p. 2]. Second, Respondent insists Petitioner is "pursuing evidence exhaustion" for claims that, again, Petitioner has "properly exhausted" in state court [*Id*. at 2, 6]. In other words, Respondent maintains that a distinction exists between "*claim* exhaustion" and "*evidence* exhaustion" [*Id*. at 6 (emphasis added)]. And because Petitioner is pursuing the latter for claims he *has* exhausted, *Rhines* does not apply [*Id*. at 5–6]. Respondent cites *Carter v. Mitchell*, 829 F.3d 455, 467 (6th Cir. 2016) and *McKnight v. Bobby*, No. 2:09-cv-59, 2016 WL 4086978, at *6 (S.D. Ohio Aug. 2, 2016) in support of its position that *Rhines* is inapplicable when a state prisoner moves to stay his federal habeas proceeding to pursue "evidence exhaustion" in state court [*Id*. at 6, 9].

In Petitioner's reply, he agrees that both *Carter* and *McKnight* "conclude[d] 'evidence exhaustion' is impermissible" [Doc. 67, p. 3]. He maintains, though, that *Carter* and *McKnight* are distinguishable from his case because, unlike the petitioner or petitioner's attorneys in *Carter* and *McKnight*, his "post-conviction counsel did not negligently fail to develop the evidence" [*Id*.].

The Court will first address Respondent's position that *Rhines* does not apply to exhausted claims. As already stated, a *Rhines* stay is appropriate when "good cause" exists "for the petitioner's failure to exhaust his claims first in state court, his *unexhausted* claims are potentially meritorious," and the petitioner has not engaged in dilatory tactics. 544 U.S. at 278 (emphasis added). *Rhines* therefore contemplates a stay of a federal habeas

petition when a state prisoner returns to state court to pursue *unexhausted* claims, and Petitioner does not appear to dispute this point [*See* Doc. 63, p. 7 (stating, in his motion, that "[t]he [*Rhines*] Court approved a 'stay-and-abey' procedure whereby a district court stays a federal habeas petition and holds it in abeyance while the petitioner presents his *unexhausted* claims to the state court" (emphasis added) (citing *Rhines*, 544 U.S. at 275))]. In addition, courts have declined to extend *Rhines* when a state prisoner moves to stay his federal habeas proceeding to pursue claims he has already properly exhausted in state court. *See, e.g.*, *Jones v. Shoop*, No. 5:19 CV 20563, 2023 WL 1929944, at *6 (N.D. Ohio Feb. 10, 2023) (stating that the petitioner "has provided state courts one full opportunity to resolve [the] constitutional issues by invoking one complete round of the State's established appellate review process, and the claims are exhausted . . . . *Rhines* does not apply[.]" (internal quotation marks and citation omitted)); *Carter*, 829 F.3d at 469 (denying a stay when the petitioner was pursuing "evidence exhaustion" for ineffective-assistance-of-trial-counsel claims that he already "properly raised . . . in his direct appeal"). Caselaw, therefore, supports that *Rhines* does not apply to claims that a state prisoner has already properly exhausted in state court.

Next, the Court will consider whether Petitioner *has* "properly exhausted" his claims, as Respondent contends because, if he has, *Rhines* does not apply [Doc. 66, p. 2]. A state prisoner properly exhausts his state remedies when he fairly presents his claims to the state courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[W]e ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state

8

courts[.]" (emphasis in original)). To satisfy the fair-presentation requirement, the petitioner must raise his claim under the same theory for the state court's consideration. *Cowans v. Bagley*, 236 F. Supp. 2d 841, 857 (S.D. Ohio 2002). Fair presentation of a claim also requires that "prisoners give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's appellate review process." *O'Sullivan*, 526 U.S. at 845. In Tennessee, presentation of a claim to the Tennessee Court of Criminal Appeals ("TCCA")—the state's intermediate appellate court—is sufficient to deem the claim exhausted under state law. *See* Tenn. S. Ct. R. 39 ("[A] claim presented to the Court of Criminal Appeals shall be considered exhausted even when such claim is not renewed in the Supreme Court on automatic review."); *see also Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (noting that "Rule 39 clearly removed Tennessee Supreme Court review as an antecedent for habeas purposes").

Again, Petitioner acknowledges that he previously presented his ineffective-assistance-of-trial-counsel claims—those that "he presents to the state court []for the second time[]"—before the trial court is his amended petition for post-conviction relief [Doc. 63, p. 5]. But, for the reasons explained below, the record reflects that he also renewed four of them on appeal following the trial court's denial of his petition for post-conviction relief and therefore "invoke[d] one complete round of . . . [Tennessee]'s established appellate review process," and the state courts considered them. *O'Sullivan*, 526 U.S. at 845. In addition, these four claims—that he is presenting for a second time in state court—are similar in substance to those he previously presented on appeal following the trial court's rejection for post-conviction relief. *See Shoop*, 2023 WL 1929944 at *4–5

9

(recognizing that "[t]he legal and factual predicates of [the petitioner's] allegedly 'new' ineffective-assistance habeas claims are essentially the same as those he presented on state post-conviction review" and concluding that "What is really exhausted here, then, is not the *claims*, but the *evidence* supporting those claims." (emphasis in original)).

Beginning with Petitioner's venue-related claim, Petitioner, in his amended petition for post-conviction relief, faulted his trial attorneys for failing to move for a change of venue despite "inflammatory pretrial publicity" [Doc. 13-12, p. 152]. Petitioner recounted the "pervasive, intrusive, and constant" local media coverage of his case, and cited *Irvin v. Dowd*, 366 U.S. 717 (1961), *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966), and *Rideau v. Louisiana*, 373 U.S. 713 (1963) in arguing that the jury—like the juries in those cases—was "presumptively prejudiced" against him, [*Id*. at 153, 157]. In addition, Petitioner distinguished his case from *Skilling v. United States*, 561 U.S. 358 (2010), in which the Supreme Court first considered whether a "presumption of prejudice" existed and then whether "actual prejudice infected" the defendant's jury. *Skilling*, 561 U.S. at 385–86. Petitioner argued that the "presumption of prejudice" alone "warrant[ed] a new trial" [Doc. 13-13, pp. 4, 5 ("This, personal prejudice alone, demands a new trial.")]. Citing *Strickland v. Washington*, 466 U.S. 668, 685 (1984), he asserted that trial counsel's "failure to recognize the prejudicial effects of the pretrial publicity" amounted to "constitutionally deficient performance that prejudiced" him [*Id*. at 5; *see* Doc. 13-12, p. 149.]

The trial court rejected Petitioner's claim. [Doc. 13-16, p. 16]. Although it agreed with Petitioner that trial counsel was deficient in failing to move for a change of venue, it determined that any "presumed prejudice" due to pretrial publicity had been rebutted due

10

to "the jury selection process" [*Id*. at 8, 16]. For similar reasons, it found "there [wa]s no showing of prejudice" under *Strickland* [*Id*. at 16 ("The Court having determined that the trial jury was fairly chosen and qualified to hear this case, the Court necessarily also determines that while trial counsel breached an objective standard of reasonableness in failing to move for a change of venue/venire, there is no showing of prejudice." (citing *Strickland*, 466 U.S. at 692, 694))].

Petitioner's appellate brief shows that he renewed this claim on appeal to the TCCA, and the TCCA agreed with the trial court's conclusions [*See* Doc. 13-43, pp. 95–110]. The TCCA, in relevant part, explained that Petitioner's trial attorneys utilized "every single one of th[e] measures" to guard against the risk of actual juror prejudice." *Davidson v. State*, No. E2019-00541-CCA-R3-PD, 2021 WL 3672797, at *41 (Tenn. Crim. App. Aug. 19, 2021); *see id*. at *42 ("[T]he record shows that the attorneys and trial judge undertook . . . painstaking care in this case."). And so, it disagreed with Petitioner's position that prejudice should be presumed and concluded that Petitioner "failed to carry his burden of establishing that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair." *Id*.

In his petition before this Court, he argues, as part of Claim 1, that trial counsel rendered ineffective assistance of counsel when it failed to petition the trial court for a change of venue because (1) "the hostile, pretrial publicity prejudiced" him [Doc. 24, pp. 30–38 ("1.1.A.")], and (2) "the venire was prejudiced against" him, [*Id*. at 42–54 ("1.1.B.")]. He devotes two sections of this claim to arguing that the TCCA's decision was

11

"unreasonable" under § 2254(d)—the standard that applies to claims adjudicated on the merits in state court [*Id.* at 55–63 ("1.1.C"–"1.1.D." (citing 28 U.S.C. § 2254(d)(1)–(2)))].

In his recent state-court findings, Petitioner claims, as he did in his petition for post-conviction relief and on appeal, that trial counsel was ineffective for failing to request a change of venue [Doc. 63-1, p. 83]. But now, he supports this claim with Edelman's declaration to establish that, contrary to the state courts' previous rulings, "[t]he jury selection methods were insufficient to eliminate the bias created by the pretrial publicity or rebut a presumption of prejudice" [*Id.* at 66, 86].

Like his venue-related claim, the ballistic-evidence claim, diminished-capacity claim, and failure-to-present-evidence claim relating to Judge Baumgartner that Petitioner raises in his recent state-court filings mirror those that he already raised on post-conviction appeal.

As to his ballistics-evidence claim, Petitioner, in his amended petition for post-conviction relief, faulted trial counsel for failing to consult with a ballistics expert [Doc. 13-13, p. 51]. Petitioner explained that the state's ballistic expert, Patricia Resig, testified, in relevant part, that the two bullets recovered from Mr. Newsom's neck and back "could have been fired from the revolver found" with Petitioner at the time of his arrest [*Id.*]. An independent expert, Petitioner argued, would have cast further doubt on the state's theory that the revolver found with him was the same one used to kill Mr. Newsom [*Id.* at 52]. The trial court rejected this claim because it determined that Petitioner did not suggest a likelihood that an independent expert could have reached conclusions other than those reached by Ms. Resig. *Davidson*, 2021 WL 3672797 at *45 (summarizing trial

12

court's opinion). On appeal, Petitioner asserted, again, that trial counsel's failure to consult a ballistics expert "constitute[d] deficient performance under *Strickland* and resulted in prejudice" [Doc. 13-43, p. 191]. The TCCA agreed with the trial court's conclusion that Petitioner satisfied neither prong under *Strickland*. *Davidson*, 2021 WL 3672797 at *45.

In his petition before this Court, he argues, as part of Claim 5, that trial counsel "ineffectively failed to investigate and present evidence that would have undermined the State's ballistic evidence" [Doc. 24, pp. 170–71]. He references the TCCA's opinion and argues that "[t]he Tennessee courts' conclusions were . . . unreasonable" under §§ 2254(d)(1) and (d)(2) [*Id*. at 173–74 ("On appeal, the Tennessee Court of Criminal Appeals affirmed the trial court's denial on the merits" (citing Doc. 13-50))]. In its answer, Respondent agrees that Petitioner exhausted this claim [Doc. 50, p. 88].

In his recent state-court filings, he now claims, as he did previously, that trial counsel was ineffective for failing to retain an expert in ballistics [Doc. 63-1, pp. 107–14]. But now, he supports this claim with Wentling's declaration—evidence that, Petitioner argues, would have shown "there was no scientific basis for the jury to conclude that" his "gun was the weapon used to kill" Mr. Newsom [*Id*. at 109, 115 (arguing that "under *Strickland*, a reasonable probability exists that the outcome of [Petitioner]'s trial would have differed had his trial counsel retained and presented an independent ballistics expert"].

With respect to Petitioner's diminished-capacity claim, he argued during post-conviction proceedings that trial counsel was ineffective during the guilt phase for failing to present an expert witness to show that he, "due to mental disease or defect," could not form the requisite mental state to support a first-degree murder conviction [Doc. 13-13,

13

pp. 53–54]. In support of this claim, Petitioner explained that, although trial counsel did retain the services of psychiatrist Dr. Peter Brown, his services were limited to the issue of mitigation during sentencing [*Id*. at 54; *see* Doc. 12-18, pp. 37–77 (Dr. Brown's sentencing-phase testimony)]. As a result, Petitioner maintained that the defense "lacked the necessary tools to conduct a constitutionally adequate defense" during the guilt phase of trial and lacked an understanding of the "neuropharmacological issues in this case" [*Id*.].

The trial court rejected this claim due to lack of evidence [Doc. 13-16, p. 39]. Specifically, the trial court observed that Petitioner's trial counsel testified that Petitioner "seemed reasonably intelligent and did not appear to exhibit any mental disorder" [*Id*. at 38]. And one of Petitioner's trial attorneys, it explained, also testified that he relied on Dr. Brown to identify any serious psychological disorders or "other issues relating to" Petitioner [*Id*.]. The trial court further explained that it had no way of knowing whether Dr. Brown discussed a potential diminished capacity defense with Petitioner's attorneys because Dr. Brown did not testify at the post-conviction hearing [*Id*.]. Petitioner renewed this claim on appeal, and the TCCA agreed with the trial court that Petitioner failed to carry his burden of proving ineffective assistance of counsel [Doc. 13-43, p. 192]. *Davidson*, 2021 WL 3672797 at *46.

In his petition before this Court, he argues, as part of Claim 5, that trial counsel "were ineffective when they failed to present expert testimony that" he "was unable to form the requisite mental statue for first-degree murder" [Doc. 24, pp. 177–78]. Respondent, in its answer to the petition, agrees that this claim is exhausted [Doc. 50, p. 91 (citing Doc. 13-43)].

14

In his recent state-court filings, Petitioner raises a similar claim [Doc. 63-1, pp. 116 ("[Petitioner]'s trial counsel rendered ineffective assistance of counsel by failing to present evidence of intoxication and diminished capacity through appropriate expert testimony to negate the required mental state for first degree murder[.]"), 120 ("Had such evidence [of his multi-drug intoxication] been presented [at the guilt phase], a reasonable probability exists that [the] jury would not have determined . . . [he] had the requisite mental state to commit first degree murder.")].  But now, he supports his claim with the following evidence: (1) affidavits from fact witnesses, who attest to Petitioner's drug use throughout the week of the crime and during the commission of the crime; (2) a psychological evaluation from licensed clinical psychologist Malcolm H. Woodland, Ph.D.; and (3) the "Report of Neuropharmacological Opinion of Jonathan Lipman" [*Id*. at 116–18, 249–67, 269–79, 281–301 ].

Finally, as to the ineffective-assistance-of-trial-counsel claim relating to Judge Baumgartner, Petitioner argued in his amended petition for post-conviction relief that trial counsel failed to adequately present evidence of Judge Baumgartner's impairment and misconduct [Doc. 13-13, pp. 37–38].  In support of this claim, Petitioner explained that trial counsel filed an amended motion for new trial and subsequent pleadings, asserting that Judge Baumgartner's intoxication and misconduct created a structural error in his case [*Id*. at 38].  He faulted trial counsel, however, for relying primarily on the Tennessee Bureau of Investigation ("TBI") investigative report because it "was not focused on [Petitioner]'s trial [*Id*.]. In other words, "[i]t . . . lacked reference to specific instances tying misconduct to" Petitioner's trial [*Id*.].  Accordingly, trial counsel's reliance "on this non-specific and

15

incomplete evidence," Petitioner argued, "was deficient performance and prejudiced" him [*Id.*].

In addressing this claim, the trial court stated that, as an initial matter, Petitioner was "attempt[ing] to relitigate issues surrounding Judge Baumgartner's purported addiction during trial" that the Tennessee Supreme Court already twice considered and "found . . . to be without merit" [Doc. 13-16, p. 32; *see* Doc. 22-11, p. 1 (Tennessee Supreme Court's opinion)]. In any event, it found that the evidence during Petitioner's post-conviction hearing did not support that Judge Baumgartner's actions affected Petitioner's trial [*Id.* at 32–33 ("Petitioner's three attorneys testified they did not find Judge Baumgartner to be affected by any medication he have been taking at the time; rather they found him to be an active and engaged participant in [Petitioner]'s trial. No other witness stated otherwise.")]. It therefore rejected Petitioner's claim that trial counsel's failure to present adequate evidence of Judge Baumgartner's impairment and misconduct amounted to ineffective assistance of counsel [*Id.*]. Petitioner renewed his claim on appeal [Doc. 13-43, pp. 189–90 (asserting that trial counsel was ineffective for relying "primarily" on the TBI investigation)]. The TCCA agreed with the trial court's rejection of this claim, stating that Petitioner failed to support it "with clear and convincing evidence." *Davidson*, 2021 WL 3672797 at *44.

In his petition before this Court, he argues, as part of Claim 5, that trial counsel "ineffectively failed to investigate and present evidence demonstrating Judge Baumgartner's mental impairment and bias" [Doc. 24, pp. 191, 196]. Petitioner states that he "appealed this claim" and argues under subsection "5.9.E." that "the state court

16

resolution of this claim was . . . unreasonable" [*Id*. at 196 (citing 28 U.S.C. § 2254(d))]. Respondent indicates in its answer that Petitioner has exhausted this claim, "[t]o the extent that he challenges trial counsels' ineffectiveness for failing to present adequate evidence at the hearing on the motion for new trial" [Doc. 50, p. 99].

In his recent state-court filings, Petitioner claims, as he did in his post-conviction proceedings and appeal, that trial counsel "rendered ineffective assistance of counsel by failing to produce evidence outside the TBI's investigate report" [*Compare* Doc. 63-1, p. 139–40 (stating that trial counsel "relied exclusively on the TBI's investigation, which was not particularized to conduct that occurred in [Petitioner']s case"), *with* Doc. 13-43, pp. 189–90]. But he now supports this claim with Lipman's report to prove "the prejudice prong for this claim of ineffective assistance of counsel" [*Id*. at 141, 348–61]. Notably, Petitioner points out that Lipman concluded Judge Baumgartner, as a likely result of his irregular opiate dosing, "'experienc[ed] some mental confusion and voids in awareness during the proceedings of the trial'" [*Id*. at 141, 354–55]. According to Petitioner, had trial counsel presented "this information" in support of his motion for new trial, the Tennessee Supreme Court "would not have found that '[n]o such proof [of opiate drug effects] exists in the record before this Court'" [*Id*. at 141 (quoting Doc. 22-1, p. 4)].

In sum, the record supports that Petitioner has already exhausted these four claims because he presented them to the TCCA, and the TCCA considered them on the merits. *See Adams*, 330 F.3d at 402 ("[O]nce the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" (quoting Tenn. Sup. Ct. R. 39)). And although he is seeking to present

17

these four claims again, albeit with "newly developed expert opinions and witness affidavits," he does not adequately explain how they have not already been "fairly presented" to the Tennessee courts, and exhausted, in view of the state-court record [Doc. 63, pp. 4, 8]. *O'Sullivan*, 526 U.S. at 845; *see Mundt v. Jenkins*, No. 2:17-cv-773, 2024 WL 1859867, at *34 (S.D. Ohio Apr. 29, 2024) (noting that "Petitioner has not explained how his ineffective assistance of trial counsel claim has not already been 'fairly presented' to the Ohio courts solely based on the missing [evidence]" when determining whether a *Rhines* stay was appropriate)].

In a similar vein, he offers no explanation as to how this "newly developed expert evidence" constitutes a new, unexhausted claim, to clarify whether he is pursuing evidence, as opposed to claim, exhaustion [Doc. 63, p. 4]. *See Mammone v. Jenkins*, No. 5:16CV900, 2018 WL 454432 at *3 (N.D. Ohio Jan. 17, 2018) ("That petitioner has obtained 'new' evidence in support of this claim . . . does not mean his claim is unexhausted."). In addition, for the reasons explained above, a comparison of these four claims he is presenting in his recent state-court filings for a "second time" and those he previously raised before the state courts—in addition to his statements in his motion—suggest that he is pursuing evidence exhaustion [*See* Doc. 63, p. 5 ("This time, though, these claims are supported by newly developed expert opinions and witness statements—*evidence* the state court previously denied Mr. Davidson the opportunity to develop[.]" (emphasis added))]. And to the extent that he is seeking a stay to exhaust evidence in state court, *Carter* directly addresses the inappropriateness of a *Rhines* stay.

18

In *Carter*, the state prisoner pleaded, in relevant part, two ineffective-assistance-of-trial-counsel claims in his petition that he had "properly raised" in state court. 829 F.3d at 469. After filing his initial petition, he moved to stay his federal habeas proceedings to exhaust "new mitigation evidence" in support of these claims in state court. *Id.* (internal quotation marks omitted). The district court, however, declined to extend *Rhines* "to encompass 'unexhausted evidence'" because doing so "would provide virtually limitless opportunities to delay finality in habeas litigation," and therefore, it denied his request to stay proceedings. *Carter v. Mitchell*, No. 1:98-cv-853, 2013 WL 1828950, at *2 (S.D. Ohio May 1, 2013). The Sixth Circuit agreed with the district court's determination that *Rhines* does not allow stays for "unexhausted *evidence*, only for unexhausted *claims*." 829 F.3d at 465 (emphasis added) (internal quotation marks omitted). The "word 'evidence,'" it explained, "does not appear anywhere in *Rhines*." *Id.* (citation omitted).

To conclude, the Court, in view of the state-court record, finds persuasive Respondent's position that Petitioner "properly raised" these four claims on appeal and that *Rhines*, therefore, does not apply [Doc. 66, p. 2]. In addition, Petitioner does not clarify whether he is pursuing evidence or claim exhaustion. And given the substance of his claims, the Court finds that Petitioner is pursuing evidence exhaustion, and a *Rhines* stay is inappropriate. Accordingly, Petitioner's request to stay this proceeding under *Rhines* while he pursues his ineffective-assistance-of-trial-counsel claims, relating to venue, ballistics evidence, Petitioner's diminished capacity, and Judge Baumgartner, is **DENIED**.

### b. Applying *Rhines*

The Court will endeavor to apply *Rhines* to Petitioner's two remaining ineffective-assistance-of-trial-counsel claims. These two claims are as follows: trial counsel was ineffective for failing to (1) ensure the venire was compromised of a fair cross-section of the community, and (2) offer expert testimony at sentencing on Petitioner's cognitive impairment [Doc. 63, p. 19]. Petitioner raised these claims in his petition for post-conviction relief [Doc. 13-13, pp. 10–12, 81–83], but the record does not reflect he raised them on appeal [*See* Doc. 13-43]. In its answer to the petition, Respondent states these two claims were not properly exhausted and are now procedurally defaulted [Doc. 50, pp. 40, 114–15]. In response to Petitioner's motion to stay, Respondent, again, argues these two claims are "now procedurally defaulted," "Petitioner lacks any means to properly exhaust the claims in state court," and he "failed to exhaust state-court remedies while they remained available to him" [Doc. 66, p. 2 (citing Doc. 50)].

According to Petitioner, good cause exists to justify a *Rhines* stay because he was "diligent in presenting his IAC claims to the state court," and "through no fault of" his own, the state court denied him funding and time to develop these claims [*Id.* at 8, 10 15]. In support of his assertion that he has been diligent, he cites *Cunningham v. Hudson*, 756 F.3d 477 (6th Cir. 2014) [*Id.* at 8] Petitioner maintains that "[j]ust as in *Cunningham*," he "diligently but unsuccessfully develop[ed] the *evidence* in support of his claims in state court" [*Id.* at 13 (emphasis added)]. He also cites *Green v. Woods*, No. 16-1018, 2016 WL 11854871, at *2 (6th Cir. Sept. 13, 2016) for the assertion that "[g]ood cause is established

20

if the petitioner has a 'reasonable excuse' to justify the failure to exhaust a claim" [*Id*. at 8].

In opposition, Respondent asserts "there is no good cause for [a] stay" because, again, Petitioner is pursuing evidence exhaustion for claims he has already either properly raised in state court or, as to these two claims, procedurally defaulted [Doc. 66, p. 6]. In addition, Petitioner's position that the "state courts wrongly thwarted his diligent attempts to properly exhaust the claims," is "a poor attempt to absolve post-conviction counsel's inadequate representation to bypass 28 U.S.C. § 2254(e)'s general prohibition of evidentiary development of th[e] procedurally defaulted" ineffective-assistance-of-trial-counsel claims [*Id*. at 8]. *See* 28 U.S.C. § 2254(e) (explaining an "applicant['s]" limitations on "develop[ing] the factual basis of a claim" in federal habeas proceedings).

Here, a review of Petitioner's fair cross-section and cognitive-impairment claims supports that, like his other four ineffective-assistance-of-trial-counsel claims, he is pursuing evidence exhaustion rather than claim exhaustion because they are similar in substance to those that he previously raised in his amended petition for post-conviction relief. *Shoop*, 2023 WL 1929944 at *4–5 ("The legal and factual predicate of Jones' allegedly 'new' . . . claims are essentially the same as those he presented on state post-conviction review . . . . What is really exhausted here, then, is not the *claims*, but the *evidence* supporting the claims." (emphasis in original)).

In his amended petition for post-conviction relief he argued his trial attorneys "were ineffective due to their failure to adequately raise a constitutional cross-section challenged

based on the racial composition of the venire" [Doc. 13-13, p. 10]. He faulted his trial attorneys for "only challeng[ing] the *potentially* arbitrary and discriminatory method used to select the grand and petit juries in his case through pretrial motion practice" [*Id*. (internal quotation marks and citation omitted)]. He claimed that trial counsel, instead, should have "put on proof in his motion for a new trial that African Americans were underrepresented in the jury pool or that such underrepresentation was the result of systemic exclusion" [*Id*. at 11]. Petitioner argued that, had they done so, he "likely would have prevailed on his fair cross-section challenge" [*Id*. at 12].

In his recent state-court filings, he argues, again, that his trial counsel only challenged "the *potentially* arbitrary and discriminatory method used to select the grand and petit juries in his case through their pretrial motion practice" [*See* Doc. 63-1, p. 95 (internal quotation marks and citation omitted)]. But now, he supports his claim with the Declaration of Professor Richard Seltzer [*Id*. at 95 ("[T]he percentage of the Black population underrepresented in the jury pool, was 41.3%."), 184–90].

As to his cognitive-impairment claim, Petitioner argued in his amended petition for post-conviction relief that his trial attorneys failed to adequately consult with experts and present evidence of at sentencing that would have "demonstrated significant deficits consistent with brain impairments and potentially identified organic injuries" [Doc. 13-13, pp. 82–83]. Although trial counsel presented testimony of Dr. Brown, he argued his trial attorneys should have consulted with a "neuropsychologist, a neurologist, neuropharmacologist, or other expert" because "the bulk of Dr. Brown's testimony focused on statistics regarding outcomes for children who underwent childhood abuse and trauma"

[*Id.* at 83]. In addition, Petitioner argued that Dr. Brown's testimony was "highly prejudicial" because he stated that "94% of children with backgrounds similar to" Petitioner's "background would ultimately commit a violent offence by age 18" [*Id.*]. This testimony, Petitioner asserted, suggested to the jury that he is "an inevitably violent criminal"—testimony that is "highly prejudicial to a jury who would be deciding whether his life should be spared [*Id.*].

In his recent state-court filings, he claims trial counsel's failure to present evidence of his cognitive deficits constitutes ineffective assistance of counsel, arguing, as he did in his petition for post-conviction relief, that Dr. Brown's testimony "focused on childhood risk factors for future violence" [Doc. 63-1, pp. 125–26, 129]. But now, he relies on the declaration of expert Auble and report of language specialist Shameka Stewart, Ph.D., J.D., to show Petitioner "possessed significant mitigating cognitive deficits" and to further show that trial counsel was deficient and failed to present evidence of Petitioner's cognitive deficits at the sentencing hearing prejudiced his defense [*Id.* at 128, 132].

So, like his other four ineffective-assistance-of-trial-counsel claims, the record supports that Petitioner is pursuing evidence exhaustion as opposed to claim exhaustion, and a *Rhines* stay is therefore improper. *See Carter*, 829 F.3d at 465.

In addition, the Court does not find Petitioner's reliance on *Cunningham* persuasive. Again, Petitioner argues that the Court should allow him to stay his case because, like the petitioner in *Cunningham*, he "diligently but unsuccessfully attempted to develop the evidence at issue in support of his claims in state court" [Doc. 63, p. 13]. But the circumstances in *Cunningham* are distinguishable from Petitioner's case.

23

In *Cunningham*, the petitioner pursued a juror bias claim in state proceedings based on "negative information" that a juror had obtained about him from her work colleagues. 756 F.3d at 479. The petitioner had moved the state court for discovery to develop this claim, but the state court denied his request. *Id.* at 480. After the state court rejected his claim, the petitioner renewed it on appeal, and the state appellate court affirmed the lower court's decision. *Id.* The petitioner then filed a petition for a writ of habeas corpus in federal court, which included the same juror bias claim he previously raised in state proceedings. *Id.* The district court permitted discovery, and the petitioner acquired affidavits which revealed that the juror "knew the victim's families," and this evidence gave rise to "a second-juror-bias claim." *Id.* at 485–86. The district court, however, found this claim was unexhausted and procedurally defaulted because he failed to raise it in state-court proceedings. *Id.* at 481.

On appeal, the petitioner asked the Sixth Circuit to remand the petition to the district court to "stay-and-abey the proceedings" so he could exhaust his second juror bias claim. *Id.* at 486–87. The Sixth Circuit, before remanding, addressed the warden's argument that the petitioner was not entitled to a stay because the petitioner was not diligent in uncovering the factual basis of his second juror bias claim. *Id.* It found the warden's argument unpersuasive because the petitioner "did not become aware of the factual basis for his *claim* until he conducted discovery in the federal district court." *Id.* at 486 (emphasis added).

Thus, *Cunningham* addressed the issue of diligence when a petitioner was attempting to develop the factual basis for a *claim* that he was not aware of and never raised before any state court—one that was different in substance from his original juror bias

24

claim. *See Cunningham*, 756 F.3d at 479–80 (stating that the first juror bias claim was based on "negative information" a juror obtain while the second was based on the juror knowing the victim's family). But again, Petitioner's cognitive-impairment and fair cross-section claims are like those he previously raised in his amended petition for post-conviction relief, and Petitioner does not suggest that the "newly developed expert opinions" give rise to new claims [Doc. 63, p. 3]. *See Mammone*, 2018 WL 454432 at *3 ("That petitioner has obtained 'new' evidence in support of this claim . . . does not mean his claim is unexhausted."). So, *Cunningham* did not contemplate whether a petitioner is diligent under the circumstances at issue here—when a petitioner is, by all appearances, returning to state court to relitigate claims he previously raised, albeit with the benefit of "newly developed expert opinions" [Doc. 63, p. 5].

In addition, even assuming that Petitioner was diligent in attempting to develop this *evidence* in state court, he does not explain why he failed to renew these two ineffective-assistance-of-trial-counsel *claims* on appeal following the trial court's rejection of his petition for post-conviction relief [*Compare* Doc. 13-13, pp. 10, 82–83 (petition for post-conviction relief), *with* 13-43 (appellate brief)]. *See West v. Carpenter*, 790 F.3d 693, 698 (6th Cir. 2015) (affirming district court's ruling that the petitioner's claim was defaulted because he failed to raise the issue at his post-conviction appellate proceedings). He therefore does not show a "reasonable excuse" for failing to raise these two claims on appeal. *Green*, 2016 WL 11854871 at *3 ("To establish good cause, the petitioner must 'set forth a reasonable excuse, supported by sufficient evidence, to justify that failure [to exhaust his claims in state court]" (internal quotation marks and citation omitted)); *see*

*Rodano v. Marquis*, No. 1:18cv2770, 2020 WL 994652, at *5 (N.D. Ohio Mar. 2, 2020) ("Generally, to show good cause for a failure to exhaust state remedies, a petitioner must show why he failed to use available state remedies timely and appropriately."). ‼

Accordingly, Petitioner has not shown he is entitled to a stay under *Rhines* as to his fair cross-section and cognitive-impairment claims because the indicates that he is pursuing evidence exhaustion as opposed to claim exhaustion. *See Carter*, 829 F.3d at 465 (determining that *Rhines* does not allow stays for "unexhausted evidence, only for unexhausted claims" (internal quotation marks omitted)). In the alternative, he does not explain why he failed to present these two claims on appeal. *See Rhines*, 544 U.S. at 277 ("[S]tay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court."). Accordingly, Petitioner's request to stay this proceeding under *Rhines* while he pursues his ineffective-assistance-of-trial-counsel claims, relating to fair cross-section and Petitioner's cognitive impairments, is **DENIED**.

### 2. Equal Protection Claim

Petitioner also seeks a *Rhines* stay to pursue a "newly arising Equal Protection Claim" based on a "new rule of constitutional law set forth in *Students for Fair Admissions Incorporated v. President & Fellows of Harvard College*, 600 U.S. 181, 203 (2023) [Doc. 63, p. 5]. Petitioner concedes that this claim is unexhausted [*Id*. at 21]. According to Petitioner, he has good cause for a stay because his Equal Protection claim is "newly arising," and he "timely presented" it to the state court in his motion to reopen post-conviction proceedings under Tennessee Code Annotated § 40-30-117 [*Id*. at 14]. *See*

26

Tenn. Code Ann. § 40-30-117(a)(1) ("The motion must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court[.]").

In *Students for Fair Admissions*, the Supreme Court held that two universities' race-based admissions systems violated the Equal Protection Clause of the Fourteenth Amendment because their programs were not "sufficiently measurable to permit judicial [review] under the rubric of strict scrutiny." 600 U.S. at 214 (internal quotation marks and citations omitted)). In addition, it found that these race-based admissions programs failed "to articulate a meaningful connection between the means they employ and the goals they pursue." *Id*. at 215.

According to Petitioner, this decision "demonstrates the Tennessee Supreme Court's standardless race-based conscious proportionality review"—the standard of review the Tennessee Supreme Court applied in his case when it considered the proportionality of this death sentences—also violates the Equal Protection Clause [Doc. 63, pp. 20–21 (citing *Davidson*, 509 S.W.3d at 225)]. In support of his argument, Petitioner, citing the Tennessee Supreme Court's opinion in *State v. Bland*, 958 S.W.2d 651, 675 (Tenn. 1997), argues that the state's highest appellate court considers a "comparison of characteristics," including the defendant's race, when conducting its proportionality review of the death sentence [Doc. 63-1, p. 33 (internal quotation marks omitted)]. And so, because "Tennessee's proportionality review undeniably considers the race of the defendant as a point of comparison," its "goals," like the universities' race-based programs at issue in *Students for Fair Admissions*, are not "sufficiently coherent" [*Id*. at 75 (internal quotation marks and citation omitted)].

27

Petitioner acknowledges that "[c]ourts in this circuit have not set forth a uniform standard for what makes a claim plainly meritless under" *Rhines* [Doc. 63, p. 14]. But he cites *Cowan v. Stovall*, 645 F.3d 815, 820 (6th Cir. 2011) and *Hickey v. Hoffner*, 701 F. App'x 422, 426 (6th Cir. 2017), to show that the Sixth Circuit has equated "plainly meritless" with "frivolous" and that courts are "caution[ed] against ruling on the merits of the claim" [*Id*. (internal quotation marks omitted))]. In *Cowan* and *Hoffner*, the Sixth Circuit found the petitioners' ineffective-assistance-of-trial-counsel claims, based on failure to investigate witnesses or to call alibi witnesses, were not "plainly meritless" when the record was supported with affidavits, or otherwise suggested, witnesses would have testified in the petitioners' favors. *Cowan*, 645 F.3d at 820; *Hoffner*, 701 F. App'x at 426. In a published opinion, the district court in *Misch v. Chambers-Smith*, 656 F. Supp. 3d 761, 763 (N.D. Ohio 2023), stated that "[u]nder the law of this Circuit, a claim with at least a colorable basis is not plainly meritless" under *Rhines*. *Id*. (citing *Hoffner*, 701 F. App'x at 426).

Petitioner argues his Equal Protection Claim is not plainly meritless because it is "colorable" and "has factual support" [Doc. 63, p. 21]. He further maintains "[i]t is at least debatable that the state court will review his claim" because *Students for Fair Admissions* "will apply retroactively" under Tennessee Code Annotated § 40-30-122 [*Id*. at 27]. A rule applies retroactively, he states, if "it requires the observance of fairness safeguards that are implicit in the concept of ordered liberty," and *Students for Fair Admissions* "meets this test" [*Id*. at 28].

28

In opposition, Respondent argues Petitioner's Equal Protection claim is "plainly meritless" because "[t]he application of Equal Protection principles to race-based university admissions decision-making has no impact on the limited way in which race may be considered in Tennessee's proportionality review" [Doc. 66, p. 17]. In addition, Respondent maintains the state court will not reopen his post-conviction proceeding "to authorize review of th[is] claim" under Tennessee Code Annotated § 40-30-117 [*Id*.].

A review of Petitioner's recent state-court filings show he is pursuing this claim in a motion to reopen his post-conviction proceedings under Tennessee Code Annotated § 40-30-117. This statute allows a petitioner to file a motion in the trial court to reopen the first post-conviction petition only if:

> The claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required.

Tenn. Code Ann. § 40-30-117(a)(1). Tennessee Code Annotated § 40-30-122, which Petitioner cites, [Doc. 63, p. 28], provides guidance on when a new rule applies retroactively:

> [A] new rule of constitutional criminal law is announced if the result is not dictated by precedent existing at the time the petitioner's conviction became final and application of the rule was susceptible to debate among reasonable minds. A new rule of constitutional criminal law shall not be applied retroactively in a post-conviction proceeding unless the new rule places primary, private individual conduct beyond the power of the criminal law-making authority to proscribe or requires the observance of fairness safeguards that are implicit in the concept of ordered liberty.

Tenn. Code Ann. § 40-30-122.

29

Petitioner explains that *Students for Fair Admissions* "will be retroactive" under § 40-30-122 "if it requires the observance of fairness safeguards that are implicit in the concept of ordered liberty" [*Id.*]. In his recent state-court filings, he further explains how the decision is "implicit in the concept of ordered liberty" within the meaning of § 40-30-122 [Doc. 63-1, pp. 78–79].

But § 40-30-122, by all appearances, applies when a "new rule of constitutional *criminal* law is announced." *Id.* (emphasis added); *see Bush v. State*, 428 S.W.3d 1, 20 (Tenn. 2014) (explaining that "the 'fairness safeguards' of Tennessee Code Annotated § 40-30-122 are equivalent to the *Teague v. Lane* standard's 'watershed rules of criminal procedure' or 'those new procedures without which the likelihood of an accurate conviction is seriously diminished'" (quoting *Teague v. Lane*, 489 U.S. 288, 313 (1989))). And Petitioner does not offer any relevant legal authority suggesting that the rule of law in *Students for Fair Admissions*—finding race-based admissions programs in the context of higher education unconstitutional—could, plausibly, "apply retroactively" to Tennessee's proportionality review for capital punishment or Petitioner's criminal conviction and sentence under § 40-30-122 [Doc. 63, pp. 27–28]. *Cf. Bush*, 428 S.W.3d at 21 ("Because the rule we announced in *Ward v. State* was neither a watershed rule of criminal procedure nor a rule that substantially enhances the accuracy of convictions, we decline to find that the rule is 'implicit in the concept of ordered liberty' under Tenn. Code Ann. § 40–30–122"). So, although the Court recognizes that Petitioner need not show his claim is actually meritorious under the "potentially meritorious" or "plainly meritless" factors of

30

*Rhines*, it strains to find, on the record before it, that Petitioner's Equal Protection claim is even "colorable" [Doc. 63, p. 22]. *Rhines*, 544 U.S. at 277–78; *see Reye v. Soto*, No. CV 15-68566-CJC (SP), 2016 WL 4951150, at *5 (C.D. Cal. Aug, 1, 2016) (determining that the petitioner's claim, based on "new rule of constitutional law" was "plainly meritless" because the state-law opinion "[wa]s not applicable to petitioner's conviction").

To conclude, Petitioner has not demonstrated his Equal Protection claim is "potentially meritorious," or not "plainly meritless." *Rhines*, 544 U.S. at 277–78. Accordingly, his request to stay this proceeding under *Rhines*, while he pursues his Equal Protection claim in state court, is **DENIED**.

### B. Motion for Extension of Discovery Deadline

Petitioner moves the Court to extend the time for filing his motion for discovery [Doc. 68]. Pursuant to this Court's scheduling order, "all motions for discovery [are due] . . . within 90 days of the reply" to the petition [Doc. 10, p. 2]. Because Petitioner filed his reply to the petition on May 17, 2024 [Doc. 61], motions for discovery were due on August 15, 2024 [Doc. 68, p. 1]. In his motion, he asks the Court to enter an order "to include an extension of forty-five days, after an order from this Court denying the stay motion" [*Id*. at 2].

Under Rule 6 of the Federal Rules of Civil Procedure, a "court may, for good cause," permit an extension "if a request is made[] before the original time" expires. Fed. R. Civ. P. 6(b)(1)(A). "[T]he primary measure of the 'good cause' standard" under Rule 6(b)(1)(A) "is the moving party's diligence in attempting to meet the deadlines, though courts may also consider prejudice to the nonmoving party." *Layman v. United Parcel*

*Serv., Inc.*, No. 3:17-CV-738, 2019 WL 1966123, at *3 (W.D. Ky. May 2, 2019) (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 623, 625 (6th Cir. 2002)). Petitioner filed his motion for extension before the time for filing his motion for discovery expired, and his motion, therefore, is timely. The Court also sees no foreseeable prejudice in permitting a 45-day extension because Petitioner states Respondent does not oppose his motion [Doc. 68, p. 2].

Accordingly, for good cause, and because Petitioner's motion is unopposed, his request "to include an extension of forty-five days" [Doc. 68] will be **GRANTED**.

## IV. Conclusion

For the reasons set forth above, Petitioner's Motion to Stay and Hold in Abeyance Federal Habeas Proceedings [Doc. 62] is **DENIED**. His Motion for Extension of Time to file his motion for discovery [Doc. 68] is **GRANTED**. Petitioner **SHALL** file his motion for discovery within 45 days of this Order's entry.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE